Slip Op. 06-67

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————— :
                                               :
CRAWFISH PROCESSORS ALLIANCE,    :
LOUISIANA DEPARTMENT OF            :
AGRICULTURE AND FORESTRY; and     :
BOB ODOM, COMMISSIONER,            :
                                               :
          Plaintiffs,                          :
                                               :
          v.                                   :          Before:      WALLACH, Judge
                                               :          Court No.:    05-00045
UNITED STATES,                     :
                                               :
          Defendant.                           :
—————————————————————— :

[Plaintiffs' Motion for Judgment on the Agency Record is Denied.]

Dated: May 5, 2006

Adduci, Mastriani & Schaumberg, L.L.P., (Will E. Leonard and John C. Steinberger) for
Plaintiffs Crawfish Processors Alliance, Louisiana Department of Agriculture and Forestry, and
Bob Odom, Commissioner.

Peter Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson,
Deputy Director; David S. Silverbrand, Trial Attorney, U.S. Department of Justice, Civil
Division, Commercial Litigation Branch; and Marisa Beth Goldstein, Attorney, Office of the
Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant United
States.


**OPINION**

**Wallach, Judge:**

**I**
**Introduction**

Plaintiffs Crawfish Processors Alliance ("CPA"), the Louisiana Department of

Agriculture and Forestry, and Bob Odom, Commissioner, are contesting the exclusion of

crawfish etouffee from the antidumping duty order covering prepared and preserved freshwater crawfish tail meat, arguing that Commerce failed to conduct an anti-circumvention inquiry as part of its overall scope investigation to determine the products subject to the antidumping duty order. Plaintiffs challenge the final scope determination by the U.S. Department of Commerce ("Commerce" or "the Department") finding that crawfish etouffee is not included in the antidumping duty order ("AD order") against imports of "freshwater crawfish tail meat." Notice of Final Scope Determination: Freshwater Crawfish Tail Meat from the People's Republic of China, (December 17, 2004) ("Scope Ruling")[1]; see also Antidumping Duty Order: Freshwater Crawfish Tail Meat from the People's Republic of China, 62 Fed. Reg. 48,218 (September 15, 1997) ("Order"). This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2004).

## II
## Background

On June 4, 2004, Coastal Foods, LLC ("Coastal"), an importer of crawfish etouffee,[2] requested a scope ruling from Commerce determining that etouffee was outside the scope of the AD order in place against imports of prepared or preserved freshwater crawfish tail meat from the People's Republic of China ("PRC"). App. For Scope Ruling for Crawfish Etouffee, at 2 (June 14, 2004). Plaintiff, CPA, is the organization representing domestic producers of freshwater crawfish tail meat. CPA seeks the inclusion of Coastal's crawfish etouffee within the scope of the AD order.

---

[1] This decision is unpublished.

[2] Plaintiffs describe crawfish etouffee as "a mixture of freshwater crawfish tail meat and various other substances." Brief of the CPA et al., Plaintiffs, in Support of Motion for Judgment on the Agency Record ("Plaintiffs' Brief") at 1.

2

In response to Coastal's request, Commerce conducted a scope inquiry pursuant to 19 C.F.R. § 351.225(k)(2). CPA and Coastal submitted comments to Commerce on August 30, 2004, and September 9, 2004, respectively. See Plaintiffs' Appendix at B ("Pl. App."). On December 17, 2004, Commerce issued its Scope Ruling, determining that Coastal's crawfish etouffee was excluded from the scope of the AD order. See Pl. App. at A.

Oral argument was held on Wednesday, April 5, 2006.

**III**
**Standard of Review**

This court must sustain "'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" Fujitsu General Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938); see also Matsuhita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984). Even where it is possible for the agency to draw two inconsistent conclusions from the evidence contained in the record, the agency's findings are supported by substantial evidence. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).

Where Congress' purpose or intent is not clear or nonexistent, the court makes a determination of the lawfulness of an agency's statutory construction under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ("Chevron"). Further, the Court of Appeals for the Federal Circuit has held that

3

statutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron. Pesquera Mares Australes Ltd. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2002).

**IV**
**Analysis**
**A**
**1**
**Commerce Properly Initiated Its Scope Inquiry**

Plaintiffs argue that scope language in the Antidumping Duty Order is dispositive of the scope of the Order. See Plaintiffs' Brief at 22. Therefore, Plaintiffs say, Commerce's scope analysis utilizing the Diversified Products criteria contained in 19 C.F.R. § 351.225(k)(2) was erroneous.[3] Plaintiffs' Complaint at ¶ 32-33.

Defendant counters that an analysis based upon the Diversified Products factors was appropriate because the descriptions contained in the petition, investigation, and prior proceedings did not clearly address the issue. See Defendant's Response in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Response") at 16. In determining whether etouffee was included within the scope of the order upon crawfish tail meat, the Government argues that

> Commerce considered Coastal's arguments, the scope of the order, and as required by 19 C.F.R. §§ 351.225(d) and (k)(1), also examined the petition, the initial investigation, and the determinations of Commerce and the ITC . . .

Defendant's Response at 9. Defendant further argues that Commerce must consider the five

---

[3] Prior to statutory codification, the factors enumerated in 19 C.F.R. § 351.225(k)(2) were identified by this court in Diversified Products Corp. v. United States, 6 CIT 155, 572 F. Supp. 883 (1983).

Diversified Products factors when a review of the initial criteria in 19 C.F.R. § 351.225(d) and (k)(1) does not definitively resolve whether an order covers a particular product.[4] See Defendant's Response at 16; see also 19 C.F.R. § 351.225(d), (e), and (k); Novosteel S.A. v. United States, 284 F.3d 1261, 1270 (Fed. Cir. 2002); Allegheny Bradford Corp. v. United States, 342 F. Supp. 2d 1172, 1183 (CIT 2004).

Commerce has broad discretion in interpreting its own regulations and antidumping duty orders. See, e.g., Tak Fat Trading Co. et al. v. United States, 396 F.3d 1378, 1382 (CIT 2005)

---

[4] 19 C.F.R. § 351.225(d) states that the Secretary will issue a final scope ruling when:

[T]he Secretary can determine, based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section, whether a product is included within the scope of an order or a suspended investigation . . .

19 C.F.R. § 351.225(k) states:

With respect to those scope determinations that are not covered under paragraphs (g) though (j) of this section, in considering whether a particular product is included within the scope of an order or a suspended investigation, the Secretary will take into account the following:

(1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary . . . and the Commission.

(2) When the above criteria are not dispositive, the Secretary will further consider:

   (i) The physical characteristics of the product**;**
   (ii) The expectations of the ultimate purchasers;
   (iii) The ultimate use of the product;
   (iv) The channels of trade in which the product is sold; and
   (v) The manner in which the product is advertised and displayed.

(citing INA Wazlager Schaeffler KG v. United States, 108 F.3d 301, 307 (Fed. Cir. 1997));

Ericcson GE Mobile Comm'ns v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995); Duferco

Steel, Inc. v. United States, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002).  Pursuant to its regulations,

Commerce must conduct an inquiry when the scope of the order is unclear. See 19 C.F.R. §

351.225(k)(2); see also Duferco, 296 F.3d at 1096.

The original scope order language was based upon language provided by the CPA in its

September 26, 1996 petition.[5] See Defendant's Response at 9.  No language in any version of the

order specifically included etouffee in its scope. Id. at 10.  The petition stated only that etouffee

was one of the end uses of the subject crawfish tail meat. Id. at 11; Pl. App. B at Exhibit 1.

Commerce added language in the final order, concluding that:

> as the petition, investigation, and previous reviews did not address etouffee
> specifically, the description of the merchandise contained in these proceedings are
> not dispositive as to whether etouffee was intended to be included in the order on
> freshwater crawfish tail meat.[6]

---

[5] In its petition, the CPA described the freshwater crawfish tail meat as follows:

> The imported product subject to this petition is freshwater crawfish
> tail meat from China in all its forms, grades, sizes, whether frozen,
> fresh, chilled, and regardless of how it is preserved, or prepared.
> The tail meat currently imported from China is frozen.
>         \*       \*      \*
> Tail meat is a peeled crawfish product, which is usually blanched
> prior to peeling.  Whole crawfish, including live and whole boiled
> crawfish, whether frozen, fresh, or chilled, are not included within
> the scope of this petition.  Salt water crawfish of any type are
> similarly not within the scope of this petition.

Defendant's Response at 9-10 (citing Pl. App. B at Exhibit 1).

[6] The final order states

> The product covered by this investigation and order is freshwater

6

Defendant's Response at 10-11 (citing Scope Ruling at 9).  Therefore, Commerce acted appropriately when it initiated a scope inquiry under 19 C.F.R. § 351.225(k).

As Defendant correctly states, because Commerce determined that the initial criteria did not "definitively resolve" whether etouffee was within the scope of the order, Commerce's determination to conduct the scope inquiry was consistent with its regulations and court precedent. See 19 C.F.R. § 351.225(k); see also Chevron, 467 U.S. at 842; Defendant's Response at 16.  "In conducting this analysis, 'it is well settled that commerce has discretion in how to balance the Diversified Products criteria." Novosteel, 128 F. Supp. 2d at 732; see also Koyo Seiko Co., Ltd. v. United States, 21 CIT 146, 162, 955 F. Supp. 1532 (1997); Smith Corona Corp. v. United States, 12 CIT 854, 870, 698 F. Supp. 240 (1988).

Because the scope language in the AD order was not dispositive, Commerce's decision to apply a Diversified Products analysis was supported by substantial evidence and in accordance with law.

**2**
**It Was Within Commerce's Discretion Not To Conduct An Anti-Circumvention Inquiry**

Plaintiffs further argue that Commerce erred when it failed to consider whether its

---

crawfish tail meat, in all its forms (whether washed or with fat on, whether purged or unpurged), grades, and sizes; whether frozen, fresh, or chilled; and regardless of how it is packed, preserved, or prepared.  Excluded from the scope of the investigation and order are live crawfish and other whole crawfish, whether boiled, frozen, fresh, or chilled.  Also excluded are saltwater crawfish of any type, and parts thereof . . .. The written description of the scope of this proceeding is dispositive.

Defendant's Response at 10 (citing Order, 62 Fed. Reg. at 48,219).

7

etouffee constituted a "minor alteration of crawfish tail meat" or "later developed merchandise" as part of its scope inquiry in response to its request. 19 C.F.R. § 351.225(i) and (j); Plaintiffs' Brief at 1-2.

Defendant counters that it is not always required to apply the "anti-circumvention" provisions in sections 351.225(g) through (j) whenever it conducts a scope inquiry pursuant to section 351.225(k). Defendant's Response at 5.

Section 351.225(k) of the Department's regulations state that these criteria govern scope inquiries "that are not covered under paragraphs (g) through (j) of this section . . .." 19 C.F.R. § 351.225(k). An anti-circumvention inquiry is not required in every scope determination, as revealed by language stating "the Secretary may include within the scope of an antidumping or countervailing duty order articles altered in form or appearance in minor respects." 19 C.F.R. § 351.225(i) (emphasis added). Similar language is provided in section (j). See 19 C.F.R. § 351.225(j).

This court has also held that a scope inquiry under section (k) does not automatically trigger additional inquiry under sections (g) through (j). Allegheny, 342 F. Supp. 2d at 1183.

> Commerce is governed by a two-step process set forth in 19 C.F.R. § 351.225(k) (2003). First, § 351.225(k)(1) requires that Commerce make its determination by taking into account "the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the commission." 19 C.F.R. § 351.225(k)(1). If those criteria are not dispositive, Commerce then evaluates the product according to the Diversified Products factors.

Defendant's Response at 23 (emphasis added) (citing Allegheny, 342 F. Supp. 2d at 1183); see also Tak Fat, 396 F.3d at 1382; Novosteel, 284 F.3d at 1269-70.

Because the criteria were not dispositive, and because a formal request for an additional

inquiry was not submitted to Commerce, the Department's decision not to analyze whether crawfish etouffee was a minor alteration or later developed merchandise is supported by substantial evidence and in accordance with law.

**B**
**Commerce Correctly Determined That Etouffee Is Not Within The Scope Of The Antidumping Duty Order**

The CPA argues that the terms 'preserved' and 'prepared' each have specific meanings which Commerce failed to apply in the Final Determination. Plaintiffs' Brief at 12.

**1**
**Etouffee Is Not "Preserved" Crawfish Tail Meat**

Plaintiffs essentially claim that because crawfish etouffee is cooked prior to importation, it is "preserved" within the meaning of the antidumping order. Plaintiffs' Brief at 14.

Defendant counters that even though the etouffee is preserved by cooking, it is not "preserved" within the meaning of the antidumping duty order because "it has undergone a substantial transformation." Defendant's Response at 12. Specifically, Defendant argues that the etouffee underwent a "substantial transformation" when it was cooked with the various spices and substances, which created a "fundamental change in the essential character of the tail meat," and resulted in a "new and different product." Defendant's Response at 12-13. Therefore, etouffee is no longer "preserved" or "prepared" crawfish tail meat.[7]

---

[7] Commerce determined that

> [t]here is no indication from the investigation, the ITC proceedings, any subsequent administrative proceedings, or the plain language of the scope that reflects an intent that any prepared food item, or other product which contains tail meat as an ingredient, would be covered by the order on freshwater crawfish tail meat.

9

"It has been held that preservation in a tariff sense 'ordinarily involves cooking, salting, drying, smoking, curing, or the application of some method or process whereby the fresh or natural condition of the article is so changed as to be more of less a permanent preservation' and that something more must be done to it than merely to arrest change and decomposition while in transit." Frosted Fruit Products Co. v. United States, 18 Cust. Ct. 119, 121 (1947) ("Frosted Fruit") (quoting United States v. Conkey & Co., 12 Ct. Cust. 552, 554-555 (1925).

Plaintiffs reliance on Frosted Fruit in support of its argument is misplaced because the cooking of crawfish etouffee does not automatically mean it is "preserved" within the meaning of the antidumping order. Frosted Fruit's holding that imported frozen guavas were not classifiable as preserved or prepared guavas, and the definition of "preserved" does not resolve the issue because Frosted Fruit made it clear that more is necessary than freezing to make something prepared or preserved. Here, the determination of whether the etouffee is "preserved" or "prepared" turns on whether the etouffee has changed so much that its essential character has been altered.

The description of the etouffee by Plaintiffs demonstrates that crawfish etouffee is more than merely "preserved" crawfish tail meat. See Pl. App. B at Exhibit 1. Thus, Commerce's determination that crawfish etouffee is not "preserved" freshwater crawfish tail meat is supported by substantial evidence and is in accordance with law.

**2**
**Etouffee Is Not "Prepared" Crawfish Tail Meat**

Plaintiffs also argue that crawfish etouffee is "prepared" crawfish tail meat. Defendant

---

Defendant's Response at 11 (citing Pl. App. C. at 10).

10

rejects this claim, based on an opposite reading of the same line of cases on which Plaintiffs rely. Defendant's at 15. Commerce, adopting Coastal's description of its own product, argues that etouffee is not prepared crawfish tail meat because the etouffee is the ultimate end use of the crawfish tail meat and a wholly different prepared food item, no longer merely "prepared" crawfish tail meat.[8] See Defendant's Response at 12.

"The term 'preparation' is not defined in the HTSUS or the General Rules of Interpretation." BASF Corp. v. United States, 391 F. Supp. 2d 1246, 1254 (CIT 2005) ("BASF"). Defendant cites the Oxford English Dictionary definition of "preparation," but courts have noted that such definitions of preparation are broad and unclear, making application of the definition practically difficult. Defendant's Response at 13-14; see BASF at 1254; see also United States v. J.H. Brown, 46 CCPA 1, 8 (1958).

"The word 'prepared,' in a tariff sense, means, ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use." Frosted Fruit, 18 Cust. Ct. at 120. However, the Federal Circuit has held that "[t]he term 'prepared'

---

[8] In its June 14, 2004 scope ruling application, Coastal described its etouffee as a product made by combining

> flour, cooking oil, onions, bell peppers, tomatoes (paste, puree or other form), celery or other vegetables, garlic, pepper, salt, other seasonings, water, thickeners (starches), oleo or butter, and crawfish tail meat.

Defendant's Response at 8 (citing Pl. App. A at 2). Coastal continued:

> etouffee contains crawfish tail meat as only one of the ingredients, and is an entirely different product from crawfish tail meat.

Id. (citing Pl. App. A at 5).

11

suggests, but does not require, the addition of incidental ingredients that <u>do not affect</u> the essential character of the product." <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1440 (Fed. Cir. 1998) (emphasis added). Here, "Commerce determined that flavors contained in the etouffee, which penetrate the meat, cannot be subsequently extracted from the tail meat." Defendant's Response at 13 (citing <u>Scope Ruling</u>). Therefore, Defendant says, "the crawfish tail meat's fundamental characteristics have been altered." <u>Id.</u>

In <u>Orlando</u>, the court found that imported tomatoes, with added garlic and spices, were not tomato sauce because the tomato flavor was "essentially unaltered" by the addition of the spices. <u>Orlando</u> at 1442. Other factors the court took into consideration in making its determination were that the product was not fit for use as a sauce, and was not marketed or actually used as a sauce. <u>Id.</u> The court also found that the product was not "preserved or prepared tomatoes" because there was a heading description that was more specific than merely tomatoes. <u>Id.</u> at 1440.

Here, Commerce has argued that the addition of spices fundamentally alter the essential character of the crawfish. <u>See</u> Defendant's Response at 13. Indeed, CPA even describes its product as sold to "end-users" as evidence of the fact that the etouffee is the ultimate end use of the crawfish tail meat. <u>See</u> Defendant's Response at 10-11 (citing Pl. App. B at Exhibit 1).

Plaintiffs argue that because the crawfish has been cooked and spices added, it has been "prepared." Plaintiffs' Brief at 21. However, <u>J.H. Brown</u>, a case Plaintiffs cite as support, states that:

> [t]here is a very definite distinction to be made between preparation, or process of preparation, and the term 'prepared.' Of course every 'prepared' product got that way be a process of preparation, but <u>processes</u> of preparation applied to a product

12

do not necessarily result in that product being 'prepared' for tariff purposes.

J.H. Brown at 7. J.H. Brown refutes Plaintiffs' interpretation of "prepared." A product is "prepared" as long as "the addition of incidental ingredients. . . do not affect the essential character of the product." Orlando at 1440; see also Stein, Hirsch & Co. et al. v. United States, 6 Cust. Ct. 154, 156 (1915). The Government has presented substantial evidence supporting its argument that the essential character of crawfish tail meat is fundamentally changed when it becomes crawfish etouffee, which is substantiated by precedent. Thus, Defendant's determination that crawfish etouffee is not "prepared" freshwater crawfish tail meat is supported by substantial evidence and in accordance with law.

## V
## Conclusion

For the above stated reasons, Commerce's scope ruling is sustained.


_/s/ Evan J. Wallach____
Evan J. Wallach, Judge

Dated: May 5, 2006
  New York, New York

13