# United States Court of Appeals for the Federal Circuit

2006-1501

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE & FORESTRY,
and BOB ODOM, COMMISSIONER,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

John C. Steinberger, Adduci, Mastriani & Schaumberg, L.L.P., of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Will E. Leonard.

David S. Silverbrand, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director. Of counsel were Berniece A. Browne, Marisa Goldstein, and John D. McInerney, United States Department of Commerce, of Washington, DC.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

2006-1501

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE & FORESTRY,
and BOB ODOM, COMMISSIONER,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  April 20, 2007
_____

Before LOURIE, RADER, and BRYSON, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> LOURIE.  Concurring opinion filed by <u>Circuit Judge</u> RADER.

LOURIE, <u>Circuit Judge</u>.

Crawfish Processors Alliance, Louisiana Department of Agriculture and Forestry, and Bob Odom, Commissioner, (collectively "CPA") appeal from the decision of the United States Court of International Trade sustaining the scope ruling by the United States Department of Commerce ("Commerce") that crawfish etouffee is not included within the scope of an antidumping duty order covering freshwater crawfish tail meat.

<u>Crawfish Processors Alliance v. United States</u>, 431 F. Supp. 2d 1342 (Ct. Int'l Trade 2006). Because substantial evidence supports Commerce's determination that etouffee is not included within the scope of the antidumping duty order, we affirm.

BACKGROUND

This appeal involves an Antidumping Duty Order imposed against freshwater crawfish tail meat imported from the People's Republic of China, effective September 15, 1997. 62 Fed. Reg. 48218-02. The product covered by that order is "freshwater crawfish tail meat, in all its forms (whether washed or with fat on, whether purged or unpurged), grades, and sizes; whether frozen, fresh, or chilled; and regardless of how it is packed, preserved, or prepared." <u>Id.</u>

On June 4, 2004, Coastal Foods, LLC ("Coastal"), an importer of crawfish etouffee, requested a scope ruling from Commerce to determine whether crawfish etouffee was included within the scope of that antidumping duty order. Coastal described crawfish etouffee as "a product made by combining and integrating flour, cooking oil, onions, bell peppers, tomatoes (paste, puree or other form), celery or other vegetables, garlic, pepper, salt, other seasonings, water, thickeners (starches), oleo or butter, and crawfish tailmeat." Coastal further elaborated that the process of making crawfish etouffee involved "a complex cooking procedure at temperatures ranging from 200°F to 350°F over a considerable time period" and resulted in the complete blending and integration of the ingredients. Coastal characterized its etouffee product as a fully cooked and ready-to-heat-and-serve "stew" comprised mostly of gravy. Coastal asserted in its scope request that crawfish tail meat is only one of many ingredients used in making etouffee and that once the tail meat has been blended and integrated

with other ingredients, it cannot be "unblended and un-integrated." Accordingly, Coastal argued that etouffee was not included within the scope of the antidumping duty order covering freshwater crawfish tail meat.

On July 29, 2004, following Coastal's request, Commerce informed all interested parties that it was initiating a scope inquiry to determine whether etouffee was included within the scope of the antidumping duty order on freshwater crawfish tail meat imported from the People's Republic of China. On August 30, 2004, the Crawfish Processors Alliance, an organization representing domestic producers of crawfish tail meat, submitted comments regarding Coastal's scope request and sought that etouffee be included within the scope of the antidumping duty order.

As required under § 351.225(k)(1) of its regulations, in deciding on the scope of an antidumping duty order, Commerce must consider the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the Commission. Commerce considered those factors and found that they were not dispositive of whether crawfish etouffee is included within the scope of the relevant antidumping duty order. Commerce focused on the descriptions of etouffee in light of the language of the order that states that the product covered by the order is "freshwater crawfish tail meat, in all its forms (whether washed or with fat on, whether purged or unpurged), grades, and sizes; whether frozen, fresh, or chilled; and regardless of how it is packed, preserved, or prepared." 62 Fed. Reg. 48218-02 (emphasis added). Commerce observed that despite the different interpretations of what constitutes "preserved" or "prepared," the proper inquiry is not whether the tail meat in etouffee was "prepared" but rather whether "etouffee is still considered tail

meat, or whether the tail meat has been transformed into a different product." Commerce found that the descriptions of etouffee in light of the scope order language did not resolve this inquiry.

Because the criteria set forth in 19 C.F.R. § 351.225(k)(1) were not dispositive of whether etouffee is included within the scope of the antidumping duty order, Commerce considered the additional <u>Diversified Products</u> factors,[1] as set forth in § 351.225(k)(2). Those factors include the physical characteristics of the product, the expectations of the ultimate purchasers, the ultimate use of the product, the channels of trade in which the product is sold, and the manner in which the product is advertised and displayed. Commerce determined that no single factor is dispositive. However, Commerce found that the overall physical characteristics of tail meat, when included in etouffee, were altered from the physical characteristics of tail meat by itself. Accordingly, Commerce found that etouffee, when cooked in the manner described by Coastal, had undergone a substantial transformation into a new and different product. Commerce further found that the expectations of the ultimate users of etouffee differ from the expectations of the ultimate users of crawfish tail meat because etouffee is suitable only for heating and serving, whereas freshwater crawfish tail meat could be used in a variety of meals. Based on consideration of the various criteria, Commerce ruled that etouffee is not included within the scope of the antidumping duty order on freshwater crawfish tail meat.

---

[1] Prior to codification of the regulations, the factors set forth in 19 C.F.R. § 351.225(k)(2) were identified by the Court of International Trade in <u>Diversified Products Corp. v. United States</u>, 572 F. Supp. 883 (Ct. Int'l Trade 1983).

The Court of International Trade sustained Commerce's scope ruling. Crawfish Processors Alliance, 431 F. Supp. 2d at 1342. The court first determined that Commerce acted appropriately under its regulations when it initiated a scope inquiry. The court next found that Commerce considered the initial criteria set forth in § 351.225(k)(1) and determined that those criteria do not resolve whether etouffee is included within the scope of the order. Accordingly, Commerce was correct to further consider the Diversified Products factors set forth in § 351.225(k)(2). The court found that Commerce carefully considered the Diversified Products factors and that substantial evidence supported Commerce's determination that etouffee is not within the scope of the order. The court noted that etouffee is something more than merely "preserved" or "prepared" crawfish tail meat and that the essential character of crawfish tail meat is fundamentally changed when it becomes etouffee. Accordingly, the court granted judgment sustaining Commerce's scope ruling.

CPA timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

"[W]e use the same standard of review that the Court of International Trade uses when reviewing scope determinations by the Commerce Department: whether substantial evidence supports Commerce's determination and whether that determination accords with law." Novosteel SA v. United States, 284 F.3d 1261, 1269 (Fed. Cir. 2002). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Moreover, we have held that Commerce

"enjoys substantial freedom to interpret and clarify its antidumping duty orders." Ericsson GE Mobile Commc'n, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995).

On appeal, CPA argues that Commerce should not have considered the Diversified Products factors set forth in § 331.225(k)(2) because the scope language in the antidumping duty order is dispositive of the issue. According to CPA, etouffee is "preserved" and "prepared" crawfish tail meat and is therefore clearly within the scope of the antidumping duty order. CPA relies on Orlando Food Corp. v. United States, 140 F.3d 1437 (Fed. Cir. 1998), for its argument that a product can be "prepared" even when the product is significantly changed by the addition of other ingredients. CPA further argues that it was improper for the Court of International Trade to have considered whether the "essential character" of the crawfish tail meat in etouffee had been changed.

The government responds that although etouffee is "preserved and prepared," it cannot be considered "preserved or prepared crawfish tail meat" because the tail meat has undergone a substantial transformation. The government contends that etouffee is not properly considered as crawfish tail meat because etouffee is a new and different product. The government argues that Orlando Food is distinguishable on its facts because that case involved a prepared product that was not the final and finished product, whereas this case does involve a final and finished product. Moreover, the government asserts that Orlando Food actually supports its position that a product can be significantly altered such that the final product may be considered as an entirely new product. Therefore, the government asserts that substantial evidence supports

Commerce's determination that etouffee is not preserved or prepared crawfish tail meat and hence is not clearly included within the scope of the antidumping duty order.

We agree with the government that the Court of International Trade properly sustained Commerce's scope ruling. Commerce's procedures for scope inquiries are set forth in 19 C.F.R. § 351.225. In determining whether a particular product is included within the scope of an antidumping duty order, Commerce considers the criteria set forth in 19 C.F.R. § 351.225(k). That regulation reads as follows:

> (k)  Other scope determinations. With respect to those scope determinations that are not covered under paragraphs (g) through (j) of this section, in considering whether a particular product is included within the scope of an order or a suspended investigation, the Secretary will take into account the following:
>
> (1)  The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.
>
> (2)  When the above criteria are not dispositive, the Secretary will further consider:
>
> (i)  The physical characteristics of the product;
> (ii)  The expectations of the ultimate purchasers;
> (iii)  The ultimate use of the product;
> (iv)  The channels of trade in which the product is sold; and
> (v)  The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k). As plainly stated in the regulations, when the criteria set forth in § 351.225(k)(1) do not resolve whether the product at issue is within the scope of the order, Commerce then considers the additional criteria set forth in § 351.225(k)(2), also known as the Diversified Products criteria.

CPA first argues that the scope order language includes etouffee, and therefore that Commerce did not need to consider the Diversified Products criteria. More

specifically, CPA argues that etouffee is "prepared" or "preserved" crawfish tail meat as provided for in the scope order language. The scope order language states that "the product covered by this investigation and order is freshwater crawfish tail meat, in all its forms (whether washed or with fat on, whether purged or unpurged), grades, and sizes; whether frozen, fresh, or chilled; and regardless of how it is packed, <u>preserved, or prepared</u>."[2] 62 Fed. Reg. 48218-02 (emphasis added). According to CPA, crawfish etouffee includes "preserved" and "prepared" crawfish tail meat and thus falls within the scope of the order. However, as Commerce noted, CPA focuses on the wrong inquiry. The scope order states that <u>crawfish tail meat</u>, whether preserved or prepared, is included within the scope of the order, but is silent on whether etouffee, which may very well include prepared or preserved crawfish tail meat, is included within the scope of the order. As Commerce determined, the proper inquiry is whether the product etouffee is still properly considered freshwater crawfish tail meat, or whether the tail meat has been transformed into a different product, such that it can no longer be considered crawfish tail meat. The express language of the scope order does not clearly resolve that inquiry.

Because Commerce determined that the language of the scope order, as well as the other factors set forth in § 351.225(k)(1), are not dispositive of whether etouffee is included within the scope order, Commerce properly considered the additional criteria in § 351.225(k)(2). Commerce found that the crawfish tail meat in etouffee has undergone a "substantial transformation" such that etouffee can no longer be considered freshwater crawfish tail meat. Substantial evidence supports that finding. According to

_____

[2] The scope order was based upon language provided by the CPA in its September 26, 1996 petition.

Coastal's description of etouffee, that product is considered to be a stew with many ingredients in addition to crawfish tail meat. The stew only needs to be heated and served before being consumed. Commerce found that the ingredients have penetrated the tail meat and have permanently altered its original flavor. Moreover, Commerce determined, and the record supports, that etouffee is intended and expected to be served as such after heating, whereas crawfish tail meat can be used as an ingredient in a variety of meals. As a mixture of many ingredients in addition to crawfish tail meat, Commerce could reasonably have determined that etouffee is not freshwater tail meat and therefore is not included within the scope of the order.

CPA relies on Orlando Food for support for its argument that the addition of other ingredients does not fundamentally change an underlying product. But the facts are different in Orlando Food and therefore that case does not aid CPA. In fact, the decision in Orlando Food provides further support for Commerce's scope ruling. That case concerned whether a specific product should be classified under the heading of the Harmonized Tariff Schedule of the United States ("HTSUS") of "Tomatoes prepared or preserved" or "Sauces and preparations therefor." Orlando Food, 140 F.3d at 1440. The product at issue was a canned tomato product consisting of approximately sixty percent whole, peeled tomatoes, and forty percent tomato puree by weight, as well as salt, citric acid, and basil leaf. Id. at 1349. Orlando sold the product to the Nestle Company, which used the product to produce finished tomato sauces. Id. We determined that Orlando's product could be classified under the "Tomatoes prepared or preserved" heading "despite the presence of incidental spices." Id. We further determined that, "although the addition of seasonings sets the product apart from

unseasoned canned tomatoes, it hardly changes the essential tomato character of the product." Id.

In contrast with the product in Orlando Food, which consisted mainly of whole tomatoes with the addition of "incidental" spices and was not a final product, Commerce found that etouffee is a final product ready to be served, consisting of many ingredients in addition to crawfish tail meat. Thus, etouffee bears a different relationship to crawfish tail meat than canned whole tomatoes does to prepared tomatoes. Accordingly, the Court of International Trade correctly relied on Orlando Food for support for its conclusion that because the essential character of the crawfish tail meat in etouffee was altered or "substantially transformed" by its preparation process, Commerce could properly have determined that etouffee is not freshwater crawfish tail meat as contemplated by the scope order.

## CONCLUSION

For the foregoing reasons, the decision by the Court of International Trade sustaining Commerce's determination that etouffee is not included within the scope of the antidumping duty order is affirmed.

<u>AFFIRMED</u>.

# United States Court of Appeals for the Federal Circuit

2006-1501

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE AND FORESTRY,
and BOB ODOM, COMMISSIONER,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellee.

RADER, Circuit Judge, concurring.

This court again applies the Atlantic Sugar standard of review to duplicate the review already given by the Court of International Trade. See Atl. Sugar, Ltd. v. United States, 744 F.2d 1556 (Fed. Cir. 1984). In this case, substantial record evidence supports Commerce's determination and I concur in the result. However, as I have previously stated in Zenith v. United States, 99 F.3d 1576, 1579-85 (Fed. Cir. 1996) (Rader, J. concurring), this court might more wisely key its standard of review to give deference to the work already performed by the Court of International Trade. Such a standard is consistent with statute, id. at 1580, and as I see it, is the proper standard this court should adopt.