Slip-Op. 09-122

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| WALGREEN CO. OF DEERFIELD, IL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | Before: Judith M. Barzilay, Judge |
| Defendant, | : | Court No. 08-00372 |
| | : | |
| and | : | |
| | : | |
| SEAMAN PAPER COMPANY OF | : | |
| MASSACHUSETTS, INC., | : | |
| | : | |
| Defendant-Intervenor. | : | |

_____:

OPINION

[Plaintiff's Motion for Judgment on the Agency Record is denied.]

Dated:  October 28, 2009

*Bryan Cave LLP* (*Joseph H. Heckendorn*), for the Plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*L. Misha Preheim*); *Scott McBride*, Senior Attorney, U.S. Department of Commerce, for the Defendant.

**Barzilay, Judge:**  Plaintiff Walgreen Company of Deerfield, IL ("Walgreen" or "Plaintiff") moves pursuant to USCIT Rule 56.2 for judgment on the agency record, challenging the U.S. Department of Commerce's ("Department" or "Commerce") September 19, 2008 scope ruling, which found that the tissue paper within Walgreen's gift bag sets falls within the scope of the antidumping duty order covering certain tissue paper products from the People's Republic of

China ("PRC").[1] *See Final Scope Ruling: Antidumping Duty Order on Certain Tissue Paper from the People's Republic of China*, A-570-894, Def. Br. App. Ex. 1 (Dep't Commerce Sept. 19, 2008) ("*Scope Ruling*"); *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Tissue Paper Products from the People's Republic of China*, 70 Fed. Reg. 16,223 (Dep't Commerce Mar. 30, 2005) ("*Amended Final Order*"). Specifically, Walgreen contests the Department's finding that the tissue paper within the gift bag sets unambiguously falls within the scope of the *Amended Final Order* and the Department's consequent decision not to employ the criteria listed in 19 C.F.R. § 351.225(k)(2) in its analysis. *See* Pl. Br. 2. Because the tissue paper component of Plaintiff's gift bag sets falls unambiguously within the scope of the *Amended Final Order*, Plaintiff's motion is denied.

## I. Background

On February 17, 2004, domestic manufacturers of tissue paper products filed an antidumping petition with respect to, *inter alia*, certain tissue paper products from the PRC with Commerce and the U.S. International Trade Commission ("ITC"). *See Notice of Initiation of Antidumping Duty Investigations: Certain Tissue Paper Products and Certain Crepe Paper Products from the People's Republic of China*, 69 Fed. Reg. 12,128, 12,128 (Dep't Commerce Mar. 15, 2004) ("*Notice of Investigations Initiation*"). Commerce commenced its investigation nearly one month later and thereafter published its preliminary determination that certain tissue paper products from the PRC were being, or likely to be, sold in the United States at less than fair value. *Id.*; *Certain Tissue Paper Products and Certain Crepe Paper Products from the People's Republic of China: Notice of Preliminary Determinations of Sales at Less Than Fair Value,*

---

[1]Defendant-Intervenor withdrew from this action on July 16, 2009.

*Affirmative Preliminary Determination of Critical Circumstances and Postponement of Final Determination for Certain Tissue Paper Products*, 69 Fed. Reg. 56,407 (Dep't Commerce Sept. 21, 2004) ("*Preliminary Determination*").  It finalized that determination almost five months later.  *Notice of Final Determination of Sales at Less Than Fair Value:  Certain Tissue Paper Products from the People's Republic of China*, 70 Fed. Reg. 7475 (Dep't Commerce Feb. 14, 2005) ("*Final Determination*").  The Department amended the *Final Determination* on March 30, 2005.  *Amended Final Order*, 70 Fed. Reg. 16,223.

On February 5, 2008, Plaintiff requested a scope ruling pursuant to § 351.225(c) on whether the tissue paper in its gift bag sets falls within the scope of the *Amended Final Order*. *See Letter from Katten Muchin Rosenman LLP to Sec'y of Commerce*, Pl. Br. App. Tab 1 at 1-11 (Feb. 5, 2008).  In its petition, Plaintiff described its gift bag sets as follows:

> **Item No. 647151, (Exhibit A), which is comprised of:**
> – 1 Petite Gift Bag with Gift Card, (4.375" X 2.5" X 5.75"), 76% of total cost.
> – 1 Crinkle Bow, 17% of total cost.
> – 1 Sheet of Colored Tissue Paper, (20" X 24"), 14 Grams per Sq. Meter, 7% of total cost.
>
> **Item No. 588150, (Exhibit B), which is comprised of:**
> – 1 Wine Tote Gift Bag with Gift Card, (5.25" X 4.25" X 13.625"), 73% of total cost.
> – 1 Crinkle Bow, 21% of total cost.
> – 2 Sheets of Colored Tissue Paper, (20" X 24"), 14 Grams per Sq. Meter, 6% of total cost.
>
> **Item No. 647152, (Exhibit C), which is comprised of:**
> – 1 Cub Gift Bag with Gift Card, (7.5" X 4.5" X 9.875"), 71% of total cost.
> – 1 Crinkle Bow, 21% of total cost.
> – 3 Sheets of Colored Tissue Paper, (20" X 24"), 14 Grams per Sq. Meter, 8% of total cost.

  **Item No. 647153, (Exhibit D), which is comprised of:**
&minus; 1 Large Gift Bag with Gift Card, (10" X 4.5" X 12.75"), 73% of total cost.
&minus; 1 Crinkle Bow, 18% of total cost.
&minus; 4 Sheets of Colored Tissue Paper, (20" X 24"), 14 Grams per Sq. Meter, 9% of total cost.

  **Item No. 591166, (Exhibit E), which is comprised of:**
&minus; 1 Jumbo Gift Bag with Gift Card, (12.75" X 7" X 16"), 74% of total cost.
&minus; 1 Crinkle Bow, 15% of total cost.
&minus; 6 Sheets of Colored Tissue Paper, (20" X 24"), 14 Grams per Sq. Meter, 11% of total cost.

Pl. Br. App. Tab 1 at 2. Plaintiff reasoned that the tissue paper in its gift bag sets does not fall within the scope of the *Amended Final Order* because the tissue paper forms a minor component of the sets. *See Scope Ruling* at 10. On September 19, 2008, the Department issued its ruling and found that, pursuant to § 351.225(k)(1), the scope of the *Amended Final Order* encompasses the tissue paper in the gift bag sets. *Id.* Specifically, Commerce determined that the gift bag sets are not "unique item[s] composed of different component pieces," but merely consist of subject and non-subject merchandise packaged together for sale. *Id.* at 11. Further, because the *Preliminary Determination* and the issues and decision memorandum accompanying the *Final Determination* state that tissue paper remains subject to the *Amended Final Order* when packaged with non-subject merchandise, the Department concluded that Plaintiff's tissue paper unambiguously lies within the order's scope. *See id.*; *Issues and Decision Memorandum for the Antidumping Duty Investigation of Certain Tissue Paper Products from the People's Republic of China*, A-570-894 (Dep't Commerce Feb. 3, 2005) ("*Issues and Decision Memorandum*"), at 5-6, *available at* http://ia.ita.doc.gov/frn/summary/prc/E5-595-1.pdf. Plaintiff now contests these

findings.[2]

## II. Jurisdiction & Standard of Review

Plaintiff brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi), and the Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). This Court grants "significant deference" to Commerce's scope rulings, *Toys "R" Us, Inc. v. United States*, Slip. Op. 08-79, 2008 WL 2764982, at *2 (CIT July 16, 2008) (quotation marks omitted), and will uphold a ruling unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." § 1516a(b)(1)(B)(i). Substantial evidence on the record constitutes "less than a preponderance, but more than a scintilla." *Novosteel SA v. United States*, 25 CIT 2, 6, 128 F. Supp. 2d 720, 725 (2001) (quotation marks & citation omitted), *aff'd*, 284 F.3d 1261 (Fed. Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of the entire record, including "whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotation marks omitted); *see Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007). That the court may draw two inconsistent conclusions from the evidence does not preclude Commerce's ruling from being supported by substantial evidence. *Novosteel SA*, 25 CIT at 12, 128 F. Supp. 2d at 730. Likewise, the court will find a scope ruling not in accordance

---

[2]In its briefs, Plaintiff asserts that Commerce found that its gift bag sets fall in the scope of the antidumping duty order. *See, e.g.*, Pl. Br. 1-2. The record, however, clearly demonstrates that only the tissue paper within the sets lies within the order's scope. *Scope Ruling* at 1. This means no antidumping duties should be imposed on the value of the components other than tissue paper. *See* Def. Br. 13.

with law if the ruling "changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004).

### III. Discussion

#### A. Applicable Law

Because the Department necessarily must couch the descriptions of merchandise subject to its antidumping determinations in general terms, the Court employs interpretive rules to resolve disputes over a determination's scope. *Id.* at 842-43, 342 F. Supp. 2d at 1183-84; *see* § 351.225(a). First, the court examines "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the [ITC]." § 351.225(k)(1). Among these documents, however, the language in the antidumping order remains paramount. *See Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *Toys "R" Us, Inc.*, 2008 WL 2764982, at *4; *Allegheny Bradford Corp.*, 28 CIT at 843, 342 F. Supp. 2d at 1184 ("The language of an order is the 'cornerstone' of a court's analysis of an order's scope."). If these criteria are not dispositive, the court then turns to the factors listed in § 351.225(k)(2): "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed." § 352.225(k)(2); *accord Crawfish Processors Alliance*, 483 F.3d at 1362. These factors permit the court to determine whether a product is "sufficiently similar as

merchandise unambiguously within the scope of an order as to conclude the two are merchandise

of the same class or kind." *Novosteel SA*, 25 CIT at 15, 128 F. Supp. 2d at 732 (quotation marks

& citation omitted).

The initial petition referred to the subject merchandise as:

> The tissue paper products subject to this investigation are produced from paper having a basis weight less than 29 grams per square meter. Tissue paper products subject to this investigation may or may not be bleached, dye-colored, surface-colored, glazed, surface decorated or printed, sequined, crinkled, embossed, and/or die-cut. The tissue paper subject to this investigation is in the form of cut-to-length sheets of tissue paper with a width equal to or greater than one-half (0.5) inch and a length not exceeding 25 feet. Subject tissue paper may be rolled, flat or folded, and may be packaged by banding or wrapping with paper or film, by placing in plastic or film bags, and/or by placing in boxes for distribution and use by the ultimate consumer. Packages of tissue paper subject to this investigation may consist solely of tissue paper of one color and/or style, or may contain multiple colors and/or styles.
>
> * * *
>
> Excluded from the scope of this investigation are the following tissue paper products: (1) tissue paper products that are coated in wax, paraffin, or polymers for use in floral and food service applications; (2) tissue paper products that have been perforated, embossed, or die-cut to the shape of a toilet seat, i.e., disposable sanitary covers for toilet seats; (3) toilet or facial tissue stock, towel, or napkin paper stock, paper of a kind used for household sanitary purposes, cellulose wadding, and webs of cellulose fibers....

Pl. Br. 7-8 (citing *Antidumping Duty Petition, Certain Tissue Paper Products and Crepe Paper*

*Products from the People's Republic of China* (Dep't Commerce Feb. 17, 2004), at 6-7 (ellipses

in original)). The scope in the *Notice of Investigations Initiation*, *Preliminary Determination*,

*Final Determination*, and *Amended Final Order* remained identical, except for the omission of

"and a length not exceeding 25 feet" and "rolled" in the description – changes immaterial to the

present action. *Notice of Investigations Initiation*, 69 Fed. Reg. at 12,129; *Preliminary Determination*, 69 Fed. Reg. at 56,410; *Final Determination*, 70 Fed. Reg. at 7476; *Amended Final Order*, 70 Fed. Reg. at 16,223-24. In addition, the *Preliminary Determination* noted that "[p]ackaging the subject merchandise with non-subject merchandise does not transform the subject merchandise into merchandise outside the scope of the investigation."[3] 69 Fed. Reg. at 56,415. In the *Issues and Decision Memorandum*, Commerce also stated that "all subject merchandise – cut-to-length tissue paper – is subject to this proceeding, whether or not it is sold or shipped with non-subject merchandise." *Issues and Decision Memorandum* at 5.

### B. The Parties' Contentions

Plaintiff claims that the *Amended Final Order* does not account for "tissue paper incorporated into mixed media sets" or "imports of tissue paper packages in sets with unrelated merchandise," rendering the order's scope ambiguous with respect to tissue paper in gift bag sets.[4] Pl. Br. 7, 9. Plaintiff dismisses the explicit language of the *Preliminary Determination* and *Issues and Decision Memorandum*, which states that tissue paper remains under the scope of the

---

[3] The Department inserted this language in response to inquires by a PRC company that sold merchandise packages in the United States containing mulberry paper, mylar film, iridescent film, oriented polypropylene, and crepe paper along with tissue paper. *See Preliminary Determination*, 69 Fed. Reg. at 56,415.

[4] Plaintiff suggests that a scope clarification request by the petitioners which sought to clarify that the *Amended Final Order* applies to imported tissue paper within kits or sets demonstrates the ambiguity of the order's scope as applied to Plaintiff's gift bag sets. *See* Pl. Br. 9-10. This argument has no merit. When performing its analysis, Commerce examines only "the petition, the initial investigation, and the determinations of [Commerce]." § 351.225(k)(1). Scope clarification requests have no bearing on the inquiry. In any event, in seeking clarification, Plaintiff explicitly argued, *inter alia*, that the descriptions of the subject merchandise contained in the petition, the initial investigation, and the determinations of the Department and of the ITC are dispositive of this scope clarification request. *See* Pl. Br. App. Tab 1 Ex. H at 2. The court agrees.

order irrespective of whether it is packaged, shipped, or sold with non-subject merchandise, as non-dispositive because its tissue paper forms a "minor or insignificant component" of a "unique mixed media set[]," i.e. the gift bag set. Pl. Br. 13. In other words, Plaintiff avers that the particular combination of its tissue paper with the non-subject merchandise is so unique that the subject tissue paper does not fall within the scope of the order. Pl. Br. 10-13. Plaintiff argues that the Department consequently should have turned to § 351.225(k)(2) in the *Scope Ruling*. *See* Pl. Br. 9.

To bolster its argument, Plaintiff relies upon a string of Commerce scope determinations concerning certain cased pencils from the PRC. For example, in one such scope determination, the Department found that otherwise unambiguously subject pencils, once placed in an art kit with other art supplies, did not fall unambiguously within the order's scope because the order did not address "mixed media" sets. *Final Scope Ruling – Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China (PRC) – Request by Target Corporation*, A-570-827 (Dep't Commerce Mar. 4, 2005), Pl. Br. App. Tab 1 Ex. K at 4. The Department proceeded to apply the § 351.225(k)(2) criteria and found the pencils in the art kit to fall outside of the order's scope. *Id.* at 4-9. Commerce adhered to similar reasoning when it found that pencils sold as components of compasses did not fall unambiguously within the scope of the antidumping order. *See generally Final Scope Ruling – Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China (PRC) – Request by Fiskars Brands, Inc.*, A-570-827 (Dep't Commerce June 3, 2005), Pl. Br. App. Tab 1 Ex. L. Plaintiff believes that the Department should have provided the tissue paper in its gift bag sets with the same treatment.

By contrast, in the *Scope Ruling*, Commerce found – and now reasserts – that the *Pencils* determinations are inapplicable to the present case. It maintains that Plaintiff's gift bag sets do not constitute "unique item[s] composed of different component pieces," but rather a grouping of independent items used in the same manner together as when sold separately. Def. Br. 13. Thus, Commerce believes that the tissue paper in gift bag sets more closely parallels the fact pattern in *Recommendation Memo – Final Scope Ruling on the Request by Texsport for Clarification of the Scope of the Antidumping Duty Order on Porcelain-on-Steel Cooking Ware from the People's Republic of China*, Def. Br. App. Tab 2 Ex. J ("*Texsport Memo*"). *Scope Ruling* at 11. In that ruling, Commerce determined that subject porcelain-on-steel cookware sold in camping sets with non-subject porcelain-on-steel merchandise remained under the order's scope. *Texsport Memo* at 4. Likewise, the Department reasoned that, although the items within the camping sets were sold together, the non-subject merchandise was "a fundamentally different class or kind of merchandise from the items addressed in the investigation" and so should not fall under the order's purview. *Id.* Commerce believes that the subject tissue paper and non-subject crinkle bow and gift bag sold together in a set in the present case have a similar relationship. *See* Def. Br. 13.

**C. Analysis**

Both parties' arguments miss the point. The salient issue before the court is not whether the Department should have characterized the gift bag sets as compilations of subject and non-subject merchandise or mixed media sets; it is whether substantial evidence in the record supports the *Scope Ruling*'s conclusion. *See Atl. Sugar, Ltd.*, 744 F.2d at 1562; *Crawfish Processors Alliance*, 483 F.3d at 1361; *see also Novosteel SA*, 25 CIT at 12, 128 F. Supp. 2d at

730.  In light of the language of the *Amended Final Order* and other relevant Department

publications, Commerce reasonably determined that the tissue paper in Plaintiff's gift bag sets

falls within the order's scope.  Plaintiff's tissue paper has all of the characteristics of tissue paper

set forth in the *Amended Final Order*, *see* Pl. Br. App. Tab 1 at 2-3, Exs. A-D, and does not fall

within the order's enumerated exceptions.  *See Duferco Steel, Inc.*, 296 F.3d at 1089 ("Scope

orders may be interpreted as including subject merchandise only if they contain language that

specifically includes the subject merchandise or may be reasonably interpreted to include it.").

Moreover, the *Preliminary Determination* and *Issues and Decision Memorandum*

explicitly note that tissue paper remains within the AD order's scope even if accompanied by

non-subject merchandise.  *See Preliminary Determination*, 69 Fed. Reg. at 56,415; *Issues and

Decision Memorandum* at 5.  The *Scope Ruling* merely reiterated this consistent position:  "[T]he

Department determines that tissue paper packaged together with other gift bags and gift wrap

items is not a component of a unique set but merely subject merchandise packaged with non-

subject merchandise." *Scope Ruling* at 11.  Although Plaintiff believes that its tissue paper more

closely resembles the merchandise described in the noted pencil determinations, Commerce

reasonably concluded from the record that its prior scope ruling on porcelain-on-steel cookware

from the PRC provides the best guidance as to whether the *Amended Final Order* applies to

Plaintiff's tissue paper.  From its own examination of the record, the court recognizes that

parallels between the tissue paper and pencils undoubtedly exist.  However, substantial evidence

on the record supports the Department's finding of equal, or even greater, parallels between the

tissue paper and porcelain-on-steel cookware.  The Department found that, like the camp sets

discussed previously, the components of the gift bag sets "could be used independently of one

another and at different times" and that the "tissue paper was a separate dutiable component, not a piece of an otherwise unique set." *Id.* Commerce, therefore, has "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks & citation omitted); *accord Bando Chem. Indus., Ltd. v. United States*, 16 CIT 133, 136, 787 F. Supp. 224, 227 (1992). Given the applicable standard of review, the court could not re-weigh this record evidence even if it so desired. *See FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009) ("[A] court is not to substitute its judgment for that of the agency . . . .") (quotation marks & internal citation omitted); *Novosteel SA*, 25 CIT at 12, 128 F. Supp. 2d at 730. Rather, it must sustain any determination supported by "such relevant evidence as a reasonable mind might accept as adequate to support *a* conclusion," and the Department has met that requirement.[5] *Atl. Sugar, Ltd.*, 744 F.2d at 1562 (emphasis added); *see also Novosteel SA*, 25 CIT at 12, 128 F. Supp. 2d at 730 (noting that administrative determination is supported by substantial evidence even if court could draw inconsistent conclusions from record).

---

[5] Because the court finds the § 351.225(k)(1) factors dispositive of whether Plaintiff's tissue paper lies within the scope of the *Amended Final Order*, the court need not address the § 351.225(k)(2) factors. *See* § 351.225(k).

## IV. Conclusion

Because the court finds the Department's *Scope Ruling* supported by substantial evidence

and otherwise in accordance with law, Plaintiff's motion for judgment on the agency record is

denied.


Dated:   October 28, 2009                                          /s/ Judith M. Barzilay
         New York, NY                                              Judge